UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| QUY DINH NGUYEN,<br><br>               Petitioner,<br><br>   v.<br><br>ROBERT FERGUSON, et al.,<br><br>               Respondents. | Case No. C17-1338-JCC-JPD<br><br>REPORT AND RECOMMENDATION |

I.    INTRODUCTION

Petitioner, a federal prisoner who is currently serving concurrent state and federal sentences, seeks relief under 28 U.S.C. § 2254 from a King County Superior Court judgment and sentence imposed for his convictions of murder in the second-degree and conspiracy to commit leading organized crime. Respondent has filed an answer to petitioner's habeas petition and submitted relevant portions of the state court record. Petitioner did not file a response. Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that petitioner's habeas petition be DENIED, a certificate of appealability be DENIED, and this action be DISMISSED with prejudice.

REPORT AND RECOMMENDATION - 1

II.   FACTUAL AND PROCEDURAL HISTORY

The Washington State Court of Appeals ("Court of Appeals"), on direct appeal, summarized the facts relevant to petitioner's conviction as follows:

> ¶ 2 Nguyen was a leader of a gang involved in growing and distributing marijuana and operating illegal gambling machines. After Nguyen's brother was convicted for shooting another gang member, Nguyen wanted to punish Hoang Nguyen (Hoang) for testifying against his brother. Nguyen arranged for his associate Le Le to pay Jerry Thomas $5,300 to shoot Hoang. Thomas's first attempt to shoot Hoang was unsuccessful because his gun jammed. Thomas later approached Hoang in a car and shot him in the head, killing him. Afterward, Nguyen paid Thomas as agreed.
>
> ¶ 3 With the assistance of a confidential witness, police identified Nguyen, learned of his role in the killing, and uncovered his leadership role in the marijuana and gambling operations. The State charged Nguyen with conspiracy to commit first degree murder, attempted first degree murder, first degree murder, and conspiracy to commit violation of the Uniform Controlled Substances Act, chapter 69.50 RCW. The State later amended the information to add charges of leading organized crime, second degree murder, first degree assault, conspiracy to commit first degree assault, conspiracy to commit first degree professional gambling, and conspiracy to commit leading organized crime.[1] The case proceeded to trial.
>
> ¶ 4 After jury selection and opening arguments, Nguyen accepted the State's offer to plead guilty to second degree murder with a firearm enhancement and conspiracy to lead organized crime. In his statement on plea of guilty, Nguyen acknowledged the factual basis for the murder plea as follows:
>
>> On January 7, 2007 and January 8, 2007, I asked a person who worked for me to hire another person to shoot Hoang Van Nguyen with a firearm. At my direction this third person shot Hoang Van Nguyen in Tukwila, King County, Washington on January 8, 2007. Although I did not intend for this third person to kill Hoang Van Nguyen, Hoang Van Nguyen died as a result of being shot. I paid this third person $5,300 for shooting Hoang Van Nguyen.
>
> Nguyen's attorney Jennifer Cruz informed the court that Nguyen's plea was voluntary:

---

[1] [Court of Appeals footnote] Nguyen was charged in federal court with conspiracy to manufacture marijuana. He pleaded guilty to that charge as part of a negotiated agreement, under which the federal prosecutor agreed to recommend that Nguyen receive the same length of sentence for the federal charge as he received for the state charges.

REPORT AND RECOMMENDATION - 2

> And your Honor we did have an opportunity, both [co-counsel] Mr. [Brian] Todd and I, to go over the Statement of Defendant on Plea of Guilty with Mr. Nguyen. Both—two interpreters. Once I went over it with Mr. Nguyen, and once Mr. Todd went over it with Mr. Nguyen. And he was able to ask any questions that he had. He had a couple of questions, and we were able to answer those questions for him. He understands that by pleading guilty today he is giving up the several constitutional rights. The most important one at this point, and at this juncture is his right to a trial . . . . I believe that he is making a knowing, intelligent, and voluntary plea today to both the murder in the second degree, and also the conspiracy to commit leading organized crime.

¶ 5 Questioned by the prosecuting attorney, Nguyen informed the court that he understood the charges against him and was satisfied with his interpreters. He stated that he had had the opportunity to discuss the charges with his attorneys, and intended to plead guilty to the reduced charges.

¶ 6 The court's colloquy with Nguyen included the following exchange:

> COURT: I want to make sure that you are not being talked into anything, and that this is your idea to plead guilty to the two counts in the second amended information of murder in the second degree armed with a firearm, and conspiracy to leading organized crime. So is it your decision to plead guilty today?
>
> NGUYEN: Yes.
>
> COURT: Do you have any questions about what you are doing?
>
> NGUYEN: No.
>
> COURT: Do you want the court, meaning me, to accept your guilty plea?
>
> NGUYEN: Yes.
>
> COURT: Do you believe you have had enough time to meet and talk with both your lawyers Ms. Cruz and Mr. Todd?
>
> NGUYEN: Yes, I have enough time.
>
> COURT: Okay. And they were able to answer all of your questions?
>
> NGUYEN: Yes.

¶ 7 The trial court determined that Nguyen's plea was made knowingly, intelligently, and voluntarily, and that there was a factual basis to support the plea.

REPORT AND RECOMMENDATION - 3

When the court inquired, Nguyen stated he had no questions. The court accepted Nguyen's plea.

¶ 8 Despite this, Nguyen moved to withdraw his guilty plea to second degree murder at his November 4, 2011 sentencing hearing, stating:

> I want to have a trial. When I signed the plea, I did not understand everything, and then—and then when the lawyer from the federal court told me that is going to be murder, it was then that I understood . . . . I swear, I never intend to kill him. I didn't kill him.

Based on Nguyen's remarks, the trial court continued the hearing until December 16.

¶ 9 On November 17, in response to Nguyen's motion for new counsel, the trial court entered an order appointing attorney Al Kitching to represent Nguyen. The order calendared a December 16 evidentiary hearing and described the purpose of the hearing:

> Mr. Nguyen shall waive the attorney-client privilege with [his prior attorneys] Ms. Cruz and Mr. Todd insofar as to their understanding of Mr. Nguyen's knowledge and understanding of the plea agreement he entered into on October 13, 2011. The court anticipates that Ms. Cruz and/or Mr. Todd may be called to testify by either side during the motion to withdraw the plea.

¶ 10 On November 29, Kitching moved for a four- to six-month continuance to consult with Nguyen, consult with experts, and investigate the case. He argued that the discovery, which he said had not been provided to him, comprised nearly 28,000 pages, and that he needed to be versed in the historical facts of the investigation in order to advise Nguyen whether to withdraw his plea. The trial court denied the motion because the only issue to resolve was whether Nguyen entered his guilty plea knowingly, intelligently, and voluntarily.

¶ 11 Kitching again moved for a continuance. At the December 16 hearing, the trial court reiterated the narrow focus of its inquiry:

> COURT: Your focus should be on whether or not Mr. Nguyen entered his plea knowingly, intelligently, and voluntarily. It's not whether he got a good deal. It's not whether you would have advised him to do the same thing. The focus of this hearing, and what this Court's responsibility [is], is to determine whether or not Mr. Nguyen made a knowing, intelligent, and voluntary plea. It's that simple.

Kitching explained the actions he had taken and felt he still needed to take in order to effectively represent Nguyen. He explained that he had not received the

REPORT AND RECOMMENDATION - 4

entire discovery, and had prepared for the hearing by reading the certification for determination of probable cause, speaking with Nguyen's former attorneys, and speaking with Nguyen. He explained that he had arranged for mental health specialist Dr. Brett Trowbridge to interview Nguyen. He informed the court that Dr. Trowbridge had met with Nguyen once and performed an initial assessment but needed additional time to determine whether Nguyen was incompetent at the time he entered his plea.

¶ 12 The court denied the motion to continue, explaining that Nguyen failed to make a "threshold showing" that his plea was invalid. The court explained that no further examination by Dr. Trowbridge was necessary because any opinion Dr. Trowbridge might have about Nguyen's mental health on the day of the plea hearing would be speculative and would carry little weight. Having dispensed with the motion to continue, the court conducted the evidentiary hearing on Nguyen's motion to withdraw his plea.

¶ 13 The State presented the testimony of Nguyen's former trial attorneys, Cruz and Todd, seeking to establish that Nguyen understood that he was pleading guilty to murder.

¶ 14 Cruz and Todd both testified that they had no reason to question Nguyen's competency to stand trial or enter a plea, or to doubt that he understood his plea or the consequences thereof. Cruz testified that she met with Nguyen approximately 20 times over two years, all but once with an interpreter. Cruz averred that she had no difficulty communicating with Nguyen about his case through the interpreters. Cruz stated that Nguyen early on expressed confidence in interpreter Nova Phung, and specifically requested to have Phung interpret when available. Todd likewise testified that he never had any concern that Nguyen didn't understand the translation, and that Nguyen never expressed any concern about the quality of translation rendered by his interpreters.

¶ 15 Both attorneys explained that Nguyen was reluctant to enter a plea but changed his mind after Le and Thomas took plea deals and agreed to testify against him. Cruz and Todd testified that they discussed proposed plea deals with Nguyen the weekend before trial. At that time, Nguyen's primary concern was the length of his sentence. If he lost at trial, he would likely be in prison the rest of his life. On the other hand, if he pleaded guilty to second degree murder, he would likely be sentenced to a maximum of 304 months. Nguyen told his attorneys that he wanted a maximum 12-year sentence, which his attorneys explained was not realistic. After jury selection and opening statements, Nguyen asked Cruz to request a 15-year deal and a manslaughter charge rather than murder. Cruz explained that this result was also not likely.

¶ 16 Both attorneys observed that Nguyen was nervous about his prospects at trial, and remained anxious after he entered the plea agreement, but appeared to be competent to enter his plea. Cruz testified that immediately before agreeing to

REPORT AND RECOMMENDATION - 5

the State's offer, Nguyen felt "overwhelmed," "tired," and "worried." He was nervous because people in jail told him that his trial prosecutor had never lost a trial, and he "mentioned looking at the jurors and being worried as to what they were thinking when opening statements were made." However, Cruz believed he was competent to either stand trial or enter a plea. Todd similarly observed nothing different about Nguyen's concentration or attentiveness to detail on the day he entered his plea.

¶ 17 Cruz testified that when the State formalized its offer of murder in the second degree, she went through the elements of that charge as articulated in the second amended information with Nguyen, and told him what the State would have to prove. Nguyen made no comments that led Cruz to believe he did not understand the elements of the charge.[2] Cruz explained that Nguyen was reluctant to plead guilty to any charge of murder, but he took the offer after he understood that the offense did not require proof that he intended to kill but simply that there was an intentional assault that resulted in someone's death. Todd likewise testified that he went through the elements of the crimes with Nguyen "several times," and "explained to him that there was an assault that occurred, and unfortunately as a result the victim died and that by definition is murder in the second degree."

¶ 18 Cruz testified that Nguyen understood the elements of the conspiracy to commit leading organized crime charge, and was actively and intelligently engaged in the bargaining process. Cruz explained that Nguyen was particularly reluctant to plead guilty to leading organized crime because he did not want people in prison to think that he led organized crime. However, Cruz testified, Nguyen came up with a solution to his quandary by suggesting that the offense be charged as a conspiracy. The State agreed to Nguyen's proposal. Cruz explained that "we went back to [the State] to ask if we could do a conspiracy, and so then it was amended to a conspiracy."

¶ 19 Cruz testified that Nguyen also demonstrated competency by requesting detailed changes to terms of the proposed no-contact order:

> A. He wanted to be able to have contact with Kristine Nguyen because of the fact that they had a child together . . . and he was concerned that with this no contact order, that he would not be able to have access to his son.
>
> Q. So was it clear to you, based upon that interaction with Mr. Nguyen, that he was paying attention or that you believed he was paying attention

---

[2] [Court of Appeals footnote 11] By way of background, Cruz explained that Nguyen did not contest the basic facts alleged in the information, but maintained he only wanted to hurt Hoang, not to kill him. Because of this, Nguyen was reluctant to plead guilty to an offense with the word "murder" in it. Cruz even discussed bringing the homicide as a federal offense without the word "murder" in it, but Nguyen declined because the federal offense carried a longer sentence. Cruz also testified that after Le and Thomas accepted plea deals and agreed to testify against Nguyen, Nguyen became more intent on resolving his case by entering a guilty plea.

REPORT AND RECOMMENDATION - 6

>    to some of the more minute details and nuances of the impact that this plea agreement was going to have on him?
>
>    A. Yes.
>
>    ¶ 20 Following the hearing, the trial court denied Nguyen's motion to withdraw his guilty pleas and commenced the sentencing. After the State presented its recommendation, the trial court granted Nguyen's motion to continue the sentencing hearing until January 27, 2012. On January 26, Nguyen moved for another continuance and for reconsideration of the order denying his motion to withdraw his plea.[3] The trial court denied both motions. Nguyen was sentenced to 304 months in custody, to be served concurrently with his federal sentence.

*State v. Nguyen*, 179 Wash. App. 271, 273-81 (2013) (citations to the record omitted, alterations in original).

On direct review, the Court of Appeals affirmed and the Washington Supreme Court denied review. Dkt. 19 at Exs. 2-8. Petitioner then filed two personal restraint petitions, both of which were unsuccessful. *Id.*, Exs. 12-7, 19-23. This timely federal habeas petition followed.

### III.   GROUNDS FOR RELIEF

Petitioner identifies the following grounds for habeas relief:

1. The trial court deprived him of his right to counsel and right to due process when it denied his request for a continuance of the plea withdrawal hearing.

2. The trial court rendered Mr. Kitching ineffective when it denied his request for a continuance of the plea withdrawal hearing because Mr. Kitching was unable to gather the evidence needed to show petitioner's plea was not knowing and voluntary.

3. Ms. Cruz was ineffective because she failed to read the entire plea agreement to petitioner during the plea hearing on October 13, 2011. Appellate counsel was ineffective because he failed to raise this issue on appeal.

4. Ms. Cruz and Mr. Todd were ineffective because they failed to raise a valid conflict of interest claim about one of the interpreters, Nova Phung. Appellate

---

[3] [Court of Appeals footnote 15] Attached to the pleadings was the declaration of expert witness Michael Iaria, who opined that Kitching was unable to provide effective assistance to Nguyen due to the trial court's rulings denying a continuance.

REPORT AND RECOMMENDATION - 7

      counsel was ineffective because although this issue was discussed during the plea withdrawal hearing, counsel failed to raise the issue on appeal.

5. Ms. Cruz and Mr. Todd were ineffective because they failed to inform petitioner during the plea hearing on October 13, 2011, that by pleading guilty, he faced the possibility of deportation.

6. Ms. Cruz and Mr. Todd provided ineffective assistance of counsel when they failed to object to Assistant U.S. Attorney Todd Greenburg prosecuting both the State and Federal cases against petitioner.

Dkt. 8 at 4, 6, 8-9, 11; Dkt. 2 at 2. Respondents concede that petitioner properly exhausted these claims in the state courts. Dkt. 17 at 9. In addition, because petitioner's claims can be resolved by reference to the state court record, an evidentiary hearing is not necessary. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record.").

### IV. DISCUSSION

A. <u>Standard of Review</u>

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if (1) the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). In considering claims pursuant to § 2254(d), the Court is limited to the record before the state court that adjudicated the claim on the merits, and the petitioner carries the burden of proof. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011); *see also Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013). "When more than one state court has adjudicated a claim, [the Court analyzes] the last reasoned decision." *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)).

REPORT AND RECOMMENDATION - 8

Under § 2254(d)(1)'s "contrary to" clause, a federal court may grant the habeas petition only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09. The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The Supreme Court has further explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law, for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. This includes the Supreme Court's holdings, not its dicta. *Id.* "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

With respect to § 2254(d)(2), a petitioner may only obtain relief by showing that the state court's conclusion was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005)

REPORT AND RECOMMENDATION - 9

(quoting 28 U.S.C. § 2254(d)(2)); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceedings."). The Court presumes the state court's factual findings to be sound unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence." *Miller-El*, 545 U.S. at 240 (quoting 28 U.S.C. § 2254(e)(1)).

B.   Claims Related to Denial of Continuance (Grounds 1 and 2)

Petitioner contends that the trial court violated his constitutional rights by denying his request for a continuance of the plea withdrawal hearing. A "continuance is traditionally within the discretion of the trial judge," however, certain denials of a continuance may constitute a due process violation. *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). As the Supreme Court has explained:

> [I]t is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. *Avery v. Alabama*, 308 U.S. 444, 60 S. Ct. 321, 84 L.Ed. 377. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. *Chandler v. Fretag*, 348 U.S. 3, 75 S. Ct. 1, 99 L.Ed. 4. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

*Ungar*, 376 U.S. at 589-590 (citations omitted); *see also Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) ("Trial judges necessarily require a great deal of latitude in scheduling trials. . . . Consequently, broad discretion must be granted trial courts on matters of continuances."); *Houston v. Schomig*, 533 F.3d 1076, 1079-1080 (9th Cir. 2008) ("To establish a Sixth Amendment violation based on the denial of a motion to continue, Houston must show that the trial court abused its discretion through an "unreasoning and arbitrary 'insistence upon

REPORT AND RECOMMENDATION - 10

expeditiousness in the face of a justifiable request for delay.'") (quoting *Morris*, 461 U.S. at 11-12), *cert. denied*, 555 U.S. 1187 (2009). Further, federal habeas corpus relief is not available unless the petitioner shows actual prejudice from the denial of a continuance. *See Gallego v. McDaniel*, 124 F.3d 1065, 1072 (9th Cir. 1997), *cert. denied*, 524 U.S. 917 (1998).

In this case, Mr. Kitching requested a 4-6 month continuance so he could consult with petitioner, consult with experts, investigate the case, and review the 27,000 pages of discovery. *See* Dkt. 19, Ex. 26 at 4-6; *Nguyen*, 179 Wash. App. at 277. The trial judge denied the request, noting that since the beginning of his appointment, he misunderstood the scope of his role:

> You've talked about collateral appellate issues; you've talked about ineffective assistance of counsel. These are all for appeal. This has nothing to do with the motion to vacate or withdraw a guilty plea. . . . Your focus should be on whether or not Mr. Nguyen entered his plea knowingly, intelligently, and voluntarily. It's not whether he got a good deal. It's not whether you would have advised him to do the same thing.

Dkt. 19, Ex. 26 at 6. The trial judge also found that Mr. Kitching did not make a threshold showing that the plea was not valid, and therefore he failed to justify a continuance. *Id.* at 9. The Court of Appeals affirmed, reasoning:

> [T]he trial court did not err by requiring Nguyen to produce something more than his mere allegations. Had Nguyen made the required threshold showing that his plea was not valid, the trial court could have permitted more intensive discovery to develop the record on that issue. Nor was it error for the trial court to conclude that the period from November 17 to December 16, 2011 was adequate time for Kitching to uncover evidence sufficient to make a threshold showing that Nguyen did not understand his plea. The trial court was not required to authorize an attorney, at public expense, to spend four to six months getting up to speed on a voluminous record without the defendant first demonstrating any likelihood of establishing a manifest injustice.

*Nguyen*, 179 Wash. App. at 284. The Court of Appeals further reasoned that petitioner failed to demonstrate prejudice:

> Nguyen fails to persuasively argue that he was, in fact, prejudiced by the trial court's denial of his motions for continuance. Rather, the circumstances indicate

REPORT AND RECOMMENDATION - 11

that he received effective assistance.  Kitching was appointed for a limited role, and was given approximately one month to prepare for a motion hearing.  He was provided a transcript of the plea colloquy, and was provided additional funds to allow an expert to assess Nguyen's mental health.  Kitching interviewed Nguyen and Nguyen's trial counsel.  Based on his investigation, Kitching forcefully advocated on Nguyen's behalf, arguing that Nguyen did not understand his plea because he was tired and stressed, potentially suffered from posttraumatic stress disorder, and may have been furnished inadequate translation services.  Although the trial court rejected these arguments based on its evaluation of the evidence, the record reveals neither a total deprivation of the right to counsel nor identifiable prejudice to Nguyen.

*Id.* at 286-87.

In support of his habeas petition, petitioner argues he brought two issues to Mr. Kitching's attention that would have shown his plea was not knowingly and intelligently made. Dkt. 2 at 3.  First, he contends that prior to the October 13, 2011 plea hearing, Ms. Cruz told him that he would be pleading guilty to first degree assault, not second degree murder; just before the hearing, Ms. Cruz read him only the first one-and-a-half pages of the ten-page plea document, and so he did not realize he was pleading guilty to second degree murder; and the courtroom camera captured Ms. Cruz reading petitioner only the beginning of the plea agreement, so if Mr. Kitching would have had time to obtain the video, it would have supported petitioner's version of events.  *Id.*

Petitioner testified during the plea withdrawal hearing that Ms. Cruz did not read him the entire plea agreement and that he did not understand that he was pleading guilty to second degree murder.  Dkt. 19, Ex. 27 at 13-14, 24-25, 47.  The trial court found that petitioner's testimony was not credible.  *Id.* at 85-86 ("I will find that Mr. Dinh Quy Nguyen has said anything that he needs to say to get his way and abrogate this plea agreement and his plea and to vacate it.  He has no credibility with this court . . . .").  The trial court also rejected petitioner's suggestion that a video recording would support his claims:  "This has never been a video court.  It was not

REPORT AND RECOMMENDATION - 12

1  videotaped." *Id.* at 86.  As noted above, the state court's factual findings are presumed sound

2  unless petitioner rebuts "the presumption of correctness by clear and convincing evidence."

3  *Miller-El*, 545 U.S. at 240 (quoting 28 U.S.C. § 2254(e)(1)).  Petitioner has not rebutted this

4  presumption, and therefore the Court defers to the state court's factual findings.  Given these

5  findings, the Court concludes that the state court correctly determined that petitioner's request

6  for a continuance was not justifiable, and that he was not prejudiced by the denial.

7       Second, petitioner argues that he informed Mr. Kitching that the primary court reporter

8  on his case, Nova Phung, threatened to translate incorrectly if petitioner did not pay him $600

9  petitioner owed him for translation services he performed for petitioner ten years before.  Dkt. 2

10  at 4.  Petitioner maintains that if Mr. Kitching had more time, he would have reviewed court

11  documents to determine whether Mr. Phung served as the interpreter during any critical phases

12  of the criminal proceeding.  *Id.*

13       The trial court allowed Mr. Kitching to question Mr. Phung during the plea withdrawal

14  hearing about the unpaid bill.  Dkt. 19, Ex. 27 at 39-40.  Mr. Phung testified that during one of

15  Ms. Cruz's pretrial visits to petitioner in jail, petitioner and Ms. Cruz briefly discussed the ten-

16  year-old case, and Ms. Cruz asked Mr. Phung whether he remembered it.  *Id.* at 40.  Mr. Phung

17  testified that he said he remembered the case because the bill had never been paid, and they all

18  laughed "a little bit about it."  *Id.*  The trial court found that Mr. Phung credibly testified that he

19  had "just let it go by" and was able to joke about it.  *Id.* at 87.  Petitioner does not rebut the

20  presumption that the trial court's finding was correct.  Likewise, he does not provide any basis to

21  justify a continuance or establish prejudice.

The state court's adjudication of his claims was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. In addition, the state court based its decision on a reasonable determination of the fats. Grounds 1 and 2 should be DENIED.

C. <u>Ineffective Assistance of Trial Counsel (Grounds 3 – 6)</u>

Petitioner argues that Ms. Cruz was ineffective because she did not read him the entire plea agreement (Ground 3), and Ms. Cruz and Mr. Todd provided ineffective assistance because they failed to: raise the conflict of interest issue regarding Mr. Phung (Ground 4), advise him of the immigration consequences of pleading guilty (Ground 5), and object to the Assistant U.S. Attorney prosecuting both his state and federal cases (Ground 6).

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must prove that (1) counsel's performance was deficient and, (2) the deficient performance prejudiced the defense. *Id.* at 687.

With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* In order to prevail on an ineffective assistance of counsel claim, a petitioner must overcome the presumption that counsel's challenged actions might be considered sound trial strategy. *Id.*

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. In order to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 104 (2011)).

While the Supreme Court established in *Strickland* the legal principles that govern claims of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate whether defense counsel's performance fell below the *Strickland* standard. *Richter*, 562 U.S. at 101. Rather, when considering an ineffective assistance of counsel claim on federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id.*; *see also Burt v. Titlow*, 134 S. Ct. 10, 18 (2013). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Richter*, 562 U.S. at 101. Thus, federal habeas review of a state court's adjudication of an ineffective assistance of counsel claim is "doubly deferential." *Pinholster*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 566 U.S. 111, 123 (2009)).

1.   *Failure to read entire plea agreement*

The Deputy Commissioner for the Washington Supreme Court ("Commissioner") considered and rejected petitioner's claim that Ms. Cruz failed to read him the entire plea agreement:

> Mr. Nguyen first argues that counsel only read him the first two pages of the plea agreement, and that his interpreter translated only part of the agreement. But he cites nothing in the record showing that to be the case, and he provides nothing else that substantiates his claim. He points to the evident fact that counsel and an

> interpreter reviewed with him a plea form with handwritten entries the day before they entered his plea, and that a different form with typewritten entries was presented the day of entry, translated by a different interpreter. But he does not show those forms contained differences of such a nature that they affected his understanding of his plea, and he does not show in any event that counsel and the interpreter failed to review with him the form that had been presented at entry of the plea. He signed the plea form acknowledging that his attorney had explained to him and had fully discussed all of the paragraphs in the form, that he understood all of them, and that he had no further questions. And the defense attorneys signed the form stating they had read and discussed the form with Mr. Nguyen and believed he fully understood it. And finally, the interpreter signed the form certifying he had interpreted the document for Mr. Nguyen. All of these matters were also represented in open court. When the trial court denied Mr. Nguyen's presentence motion to withdraw his plea, it noted that at the hearing on the taking of the plea it had pointed to the fact that two different forms had been filled out and interpreted by two different interpreters, and that Mr. Nguyen expressed no concern at that time or equivocated about his plea. Mr. Nguyen surmises that his attorneys, not knowing the typewritten copy differed from the handwritten copy, did not go over the typewritten copy with him. But that is all this claim consists of: surmise.

Dkt. 19, Ex. 17 at 2-3. Petitioner fails to present any evidence that would overcome the presumption that the state court's factual findings were correct. Likewise, he fails to establish that the Commissioner's adjudication of his claim was contrary to or an unreasonable application of *Strickland*. Ground 3 should be DENIED.

### 2.    *Failure to raise conflict of interest with Mr. Phung*

The Commissioner considered and rejected petitioner's claim that counsel was ineffective because they failed to raise his alleged conflict with Mr. Phung:

> This purported conflict stems from Mr. Nguyen's claim that in a matter 10 years earlier he had been represented by a different attorney who failed to pay Mr. Phung for his services. But in ruling on Mr. Nguyen's motion to withdraw his plea, where he raised this matter, the trial court expressly found credible Mr. Phung's testimony that he had let the matter go and had joked about it, and that it was not an issue for him. Again, whatever counsel arguably should have done upon learning that Mr. Phung had not been paid, Mr. Nguyen must demonstrate prejudice. He does not do so.

REPORT AND RECOMMENDATION - 16

*Id.* at 3.  Petitioner fails to present any argument that establishes the Commissioner's adjudication of his claim was contrary to or an unreasonable application of clearly established law.  Ground 4 should be DENIED.

      3.     *Failure to advise petitioner of immigration consequences of guilty plea*

The Commissioner also considered and rejected petitioner's claim that counsel failed to inform him of possible deportation consequences of pleading guilty:

> [H]is plea statement, which he signed and acknowledged understanding, informed him that "a plea of guilty to an offense punishable as a crime under state law is grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." And as indicated, counsel attested to reviewing everything in the statement with Mr. Nguyen.

*Id.* at 3-4.  Petitioner does not present any argument that establishes the Commissioner's adjudication of his claim was based on an unreasonable determination of the fact or that it was contrary to or an unreasonable application of clearly established law.  Ground 5 should be DENIED.

      4.     *Failure to object to Assistant U.S. Attorney*

Finally, the Commissioner rejected petitioner's claim that trial counsel was ineffective for failing to object to Assistant U.S. Attorney Todd Greenberg prosecuting both the state and federal cases against him, reasoning that counsel "did oppose the State's petition for limited admission of Mr. Greenberg to appear as a special deputy prosecutor on the State's behalf.  There is thus no factual basis for this claim."  *Id.* at 4.  Petitioner fails to show that the Commissioner's adjudication of this claim rested on an unreasonable determination of the facts.  Ground 6 should be DENIED.

REPORT AND RECOMMENDATION - 17

D.  **Ineffective Assistance of Appellate Counsel (Grounds 3 and 4)**

Finally, petitioner contends that appellate counsel provided ineffective assistance because he did not raise Grounds 3 and 4—failure to read the entire plea agreement and failure to raise the alleged conflict of interest—in his appeal. "A criminal defendant enjoys the right to the effective assistance of counsel on appeal." *Hurles v. Ryan*, 752 F.3d 768, 785 (9th Cir. 2014) (citing *Evitts v. Lucey*, 469 U.S. 387, 391-97 (1985)). Courts consider claims of ineffective assistance of appellate counsel under the *Strickland* standards set forth above. *Id.* Thus, petitioner "must show that appellate counsel's representation fell below an objective standard of reasonableness, and that, but for counsel's errors, a reasonable probability exists that he would have prevailed on appeal." *Id.* The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1428 (9th Cir.1989) (holding that appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

The Commissioner rejected petitioner's ineffective assistance of appellate counsel claims because he did not show any merit to his ineffective assistance of trial counsel claims based on the same facts. Dkt. 19, Ex. 17 at 5. Given the factual findings of the state court, specifically that petitioner knowingly signed the plea form and that there was no conflict of interest, petitioner does not show that the Commissioner's determination was contrary to or an unreasonable application of clearly established law. Grounds 3 and 4 should be DENIED.

V.  **CERTIFICATE OF APPEALABILITY**

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a

REPORT AND RECOMMENDATION - 18

district or circuit judge.  A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Under this standard, the Court concludes that a certificate of appealability should be DENIED as to all of petitioner's federal habeas claims.

## VI.   CONCLUSION

The Court recommends petitioner's habeas petition be DENIED without an evidentiary hearing and this action be DISMISSED with prejudice.  The Court further recommends that a certificate of appealability be DENIED as to all of petitioner's federal habeas claims.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **September 18, 2018**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 21, 2018.**

\\

\\

1  This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

Dated this 28th day of August, 2018.

                                                                    */s/ James P. Donohue*
                                                                   JAMES P. DONOHUE
                                                                   United States Magistrate Judge

REPORT AND RECOMMENDATION - 20